IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARIA ELENA SANTOS, individually and in
Her Capacity as Administrator of the Estate of
ERIK MORALES, Deceased,

    Plaintiff,

v.    Civil Action No. 1:19-CV-156

    Judge Kleeh

UNITED STATES OF AMERICA,

    Defendant.

ELECTRONICALLY FILED
Aug 13 2019
U.S. DISTRICT COURT
Northern District of WV

# COMPLAINT

Plaintiff Maria Elena Santos, in her capacity as Administrator of the Estate of Erik Morales, brings this action to obtain full and complete relief for the negligence that resulted in the pre-death pain and suffering of and the wrongful death of Erik Morales, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and the laws of West Virginia.

## Parties

1.  Plaintiff Maria Elena Santos ("Ms. Santos") is the mother of decedent Erik Morales.  Plaintiff Santos was appointed Administrator of the Estate of Erik Morales by the State of Florida, Miami-Dade County, on February 21, 2017, and renewed on June 13, 2019. *See* Exhibit 1.  Pursuant to W. Va. Code §55-7-6, Ms. Santos posted bond in the State of West Virginia, County of Harrison, on August 2, 2019.  *See* Exhibit 2.

2. Erik Morales ("Mr. Morales" or "decedent") was, at all relevant times, in the custody of defendant United States of America through the Bureau of Prisons at FCI Hazelton in Preston County, West Virginia.

3. Defendant United States of America (for the actions of the agents, servants, and/or employees of the United States Federal Bureau of Prisons ("BOP")) is a federal governmental entity amenable to suit in this action pursuant to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2401(b) and 2671-80.

**Jurisdiction and Venue**

4. This Court has jurisdiction over these claims against defendant United States of America pursuant to 28 U.S.C. §§ 1346(b) and 2671-2680.

5. Venue is appropriate in the Northern District of West Virginia, pursuant to 28 U.S.C. § 1391(b), as the place wherein a substantial part of the events or omissions giving rise to the claim occurred.

6. Plaintiff has exhausted her administrative remedies, as required by 28 U.S.C. § 2675, in that she instituted a claim with the BOP on April 24, 2018, by filing a Standard Form 95. The BOP formally denied the claims on June 3, 2019. *See* 06/10/19 Denial Letter, attached as Exhibit 3. Therefore, in accordance with the FTCA, the plaintiff files these causes of action within six (6) months of the denial of plaintiff's administrative claim.

7. Plaintiff has further complied with the requirements of the laws of West Virginia, as required by West Virginia Code § 55-7B-6(b), in that a Certificate of Merit was

2

served on the BOP on April 24, 2018, and, as required by Code § 55-7-6(b), in that she has posted a $100.00 costs bond.  *See* Exhibit 2.

## Facts

8. In April 2016, Erik Morales was a 30 year old inmate at FCI Hazelton who had suffered from diabetes mellitus Type 1 since childhood.

9. The medical staff at FCI Hazelton was familiar with Mr. Morales through, among other things, their daily contact with him when they tested his blood glucose and gave him insulin and/or other treatment for his diabetes.

10. At about 8:55 a.m. on the morning of April 8, 2016, Mr. Morales reported to Health Services with complaints of feeling fevered for several days and of feeling achy. He also expressed concern that his blood sugar had been high. The registered nurse did not check Mr. Morales's glucose level even though it had been 252 an hour earlier. Rather, the nurse told him to drunk fluids, gave him Motrin to take, and sent him back to the housing area.

11. By 7:00 p.m. that evening, Mr. Morales complained to Health Services of "feeling really bad" with generalized body aches, of feeling "hot and cold" and of having a cough. He rated his pain at a 3. The nurse observed that Mr. Morales was distressed and had worsening symptoms, abnormal vital signs, tachycardia and a fever of 101.9°. She gave him Tylenol, told him to drink fluids and get rest, and told him to return to the housing area. His blood glucose at the time was 201.

12. By 9:00 a.m. on the morning of April 9, 2016, Mr. Morales's blood glucose was 257. By about 1:05 p.m. that day, it was up to 324.

13. This latter blood glucose reading was taken when Mr. Morales presented to Health Services with additional complaints of nausea, vomiting, and sore throat with difficulty swallowing. His heart rate had increased, the breath sounds in his lungs had decreased, and his oxygen saturation was down to 93%. Mr. Morales was given medication for nausea and rehydrated with 1000 mL of normal saline intravenously but was again sent back to the housing area.

14. It does not appear that Mr. Morales or his blood glucose was checked again until the following morning, April 10, 2016, when, at 7:20 a.m., Mr. Morales presented at Health Services in respiratory distress. He was only able to answer the nurse's question in "3 word sentences. 'I am having trouble breathing.'" He was distressed, agitated and anxious, and his breathing was rapid and shallow. His oxygen saturation was down to 80%. His blood glucose was 389. Mr. Morales was placed on supplemental oxygen but given no fluids. He was eventually transferred to Monongalia General Hospital ("Mon General") in Morgantown, West Virginia.

15. When he arrived at the Mon General emergency department, Mr. Morales was in acute respiratory failure and in diabetic ketoacidosis. By 12:50 p.m. the next day, Mr. Morales was transferred to West Virginia University Hospitals ("WVUH") for more advanced treatment.

16. Once at WVUH, Mr. Morales was admitted to the medical intensive care unit ("MICU") where he was treated for septic shock, influenza, and acute hypoxic respiratory failure/adult respiratory distress syndrome.

17. During the next two (2) weeks, Mr. Morales was kept in the MICU, intubated and on medication. Despite being sedated, his eyes opened spontaneously, he responded to verbal commands for much of this time, and his Glasgow Coma Score during his hospitalization was generally 10-11 out of 15.

18. Mr. Morales and his mother, plaintiff Santos, had a close relationship. Plaintiff Santos, who is disabled, had traveled to West Virginia to visit her only son, Mr. Morales, at FCI Hazelton on or about January 16, 2016, Mr. Morales's birthday.

19. Mr. Morales also called his mother frequently. She last recalls speaking to him on the phone in early April 2016 when he told her he did not feel well but also told her that he loved her.

20. On about April 12, 2016, Ms. Santos was notified by a social worker at WVUH of the need to speak with her about Mr. Morales's medical treatment. When Ms. Santos expressed surprised and asked for the address of the hospital, the social worker would provide Ms. Santos with no other information.

21. Unable to get any information about their son, Ms. Santos and her husband, Mr. Morales's father, came to West Virginia on or about April 18, 2016.

22. After receiving permission from the BOP, Ms. Santos and her husband were able to visit with their son on April 21, 2016.

23. On April 21, 2016, Mr. Morales was waking up and following some commands from his doctor, such as nodding his head and squeezing the doctor's hand.

24. Also on this date, the BOP gave permission for Ms. Santos and her husband to obtain information from his health care providers at WVUH who explained the poor prognosis for Mr. Morales's recovery from the acute hypoxic respiratory failure, septic shock, and other health issues that resulted from the BOP's negligent care. Asked what her wishes were regarding her son's care at this point, Ms. Santos requested time to decide what medical decisions to make.

25. On April 23, 2016, his parents were again allowed to visit Mr. Morales in MICU. His condition had deteriorated and his mother agreed to no CPR.

26. By April 24, 2016, Mr. Morales's oxygen saturation in his blood was declining because of the adult respiratory distress syndrome and septic shock from which he had been suffering since his transfer from FCI Hazelton on April 10, 2016. The declining saturations occurred despite his being intubated with high vent settings.

27. On April 25, 2016, Mr. Morales was pronounced dead at 12:22 p.m. His cause of death was listed as sepsis due to influenza B pneumonia.

## First Cause of Action
### (Medical Negligence)

28.     Defendant United States of America, through its agents the BOP and the medical staff at FCI Hazelton, failed to exercise the degree of care, skill and learning required or expected of reasonable, prudent health care providers acting in the same or similar circumstances.

29.     Defendant, through its medical staff agents, failed to meet the standard of care with regard to the diagnosis and treatment of the decedent by failing to recognize that the decedent was at high risk for fatal complications because of his Type 1 diabetes, ignoring the import of the decedent's worsening symptoms of respiratory infection, and failing to treat his ketoacidosis until the decedent had reached a point where his life could no longer be saved. For example:

  a.    At the April 8 8:55 a.m. encounter, defendant failed to review the blood glucose results or have a higher level provider review those results and failed to schedule a follow up evaluation with Mr. Morales;

  b.    At the April 8 7:00 p.m. encounter, defendant failed to refer Mr. Morales to a higher level provider, despite his worsening symptoms, objectively abnormal vital signs, and elevated blood glucose levels;

  c.    At the April 9 1:05 p.m. encounter, defendant failed to adequately respond to Mr. Morales's worsening symptoms of nausea and vomiting

        and of high blood glucose readings, to retain Mr. Morales in Health Services for monitoring and additional hydration, or to transfer Mr. Morales to a hospital for evaluation of his respiratory compromise and to determine whether he was already in diabetic ketoacidosis;

    d.    At the April 10 7:20 a.m. encounter, defendant failed to address Mr. Morales's hydration or to emergently transfer Mr. Morales to the closest hospital.

In short, the defendant's medical staff repeatedly failed to recognize the seriousness of Mr. Morales's progressing illness and the necessity of early and more aggressive intervention in light of the risk of a fatal outcome in a person suffering from Type 1 diabetes.

    30.    As a direct and proximate result of the failures of the defendant to meet the standards of care, plaintiff's decedent suffered severe and permanent injury that required extended hospitalization and resulted in Mr. Morales's death.

    31.    As a direct and proximate result of the failure of the defendant to meet the standards of care, plaintiff's decedent endured pain and suffering and emotional distress for more than two (2) weeks prior to his death entitling plaintiff Santos, on behalf of her decedent's estate, to damages in an amount to be determined by the trier of fact.

### Second Cause of Action
**(Wrongful Death)**

    32.    Because of the failures of the defendant's agents, as set forth above and particularly at ¶ 29, plaintiff's decedent, Erik Morales, died on April 25, 2016, entitling

plaintiff Santos, on behalf of her decedent's estate, on her own behalf, and on behalf of other potential statutory beneficiaries under the West Virginia Wrongful Death Act, W.Va. § 55-7-5 *et seq.*, to damages in an amount to be determined by the trier of fact.

33. Such damages include but are not limited to:

    a. sorrow, mental anguish, and solace, including, but not limited to, loss of society, companionship, comfort, guidance, kindly offices and advice of Mr. Morales;

    b. economic loss;

    c. reasonable funeral expenses; and

    d. such other and further relief as to the finder of fact may seem fair and just.

## Prayer for Relief

WHEREFORE, plaintiff prays that she be granted relief as follows:

(a) damages as set forth in this Complaint;

(b) pre and post judgment interest; and

(c) such other and further relief as may be available at law and/or as the Court may deem just and equitable.

                                          PLAINTIFF,
                                          BY COUNSEL.

/s/ *Jane E. Peak*

JANE E. PEAK (WV BAR # 7213)
ALLAN N. KARLIN (WV BAR # 1953)
ALLAN N. KARLIN & ASSOCIATES PLLC
174 CHANCERY ROW
MORGANTOWN, WV  26505
(304) 296-8266

10